IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRIGHT HARVEST SWEET POTATO
COMPANY, INC.                                                                                           PLAINTIFF

v.                                  Case No. 2:12-cv-02155-PKH

H.J. HEINZ COMPANY, L.P.                                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant H.J. Heinz Company, L.P.'s ("Heinz") Motion to Dismiss First Amended Complaint (Doc.15) and brief in support (Doc. 16), and Plaintiff Bright Harvest Sweet Potato Company, Inc.'s ("Bright Harvest") Response (Doc. 17) and brief in support (Doc. 18).  For the reasons set forth below, the Court finds that Heinz's Motion to Dismiss the First Amended Complaint should be DENIED, but orders that the case be transferred to the United States District Court for the District of Idaho.

**I.      Background**

This action arises out of a Co-Pack Agreement ("Agreement") entered into between Bright Harvest and Heinz on December 7, 2009.  Under the terms of the Agreement, Bright Harvest would manufacture sweet potato fry products ("Product") for Heinz based on a non-binding planning target of ten million pounds per year.  Heinz would place purchase orders for the amount of Product to be manufactured based upon rolling forecasts. Heinz would pay Bright Harvest for Product manufactured and delivered based upon an agreed price per case subject to adjustments.  Bright Harvest was to manufacture the Product at its processing facility in Clarksville, Arkansas, and delivery of the Product was to be made to Heinz free on board (FOB) at the Clarksville facility.  The

Agreement was for a term of six years. (Doc. 17-1, ¶ 2).

The Agreement negotiated by the parties contains a forum selection clause and a choice of law provision. The forum selection clause states:

> 32. <u>Exclusive Jurisdiction and Venue</u>. In any action or proceeding seeking to enforce any provision(s) of, or based on any right(s) arising out of, or related to or concerning this Agreement, the parties hereto consent to the *exclusive jurisdiction* of the Federal and/or State court in Boise, Idaho. In any such action or proceeding, venue shall lie *exclusively* in Boise, Idaho, and in no other location. The parties further agree that in any such action or proceeding the parties shall appear for deposition at their own expense in Boise, Idaho at such time as is either mutually agreed upon by the parties or ordered by the court.

*Id.* at ¶ 32 (emphasis added). The choice of law provision calls for the Agreement to be governed by and construed by the laws of the State of Idaho. *Id.* at ¶ 31.

In March 2011, Heinz notified Bright Harvest that it would be reducing purchases of the Product to six million pounds per year. Heinz would continue to place purchase orders based on a 12 to 18 month rolling forecast. (Doc. 10, ¶¶ 17-18). In early 2012, Heinz failed to make a rolling forecast of purchases. Heinz told Bright Harvest that a failure to make forecasts was a forecast of no purchases. *Id.* at ¶ 19. In September 2012, Heinz notified Bright Harvest that it would no longer be making purchases of the Product. *Id.* at ¶ 20.

Bright Harvest asserts two causes of action against Heinz. First, Bright Harvest alleges that Heinz breached the Agreement when it notified Bright Harvest that it would no longer purchase Product as of the end of September 2012. Second, Bright Harvest alleges that, in reliance upon Heinz's obligations under the Agreement, it made capital expenditures and invested time and labor to provide Heinz with the volume of Product needed. Bright Harvest further alleges that Heinz should be equitably estopped from avoiding its obligations under the Agreement and that Bright

Harvest should be awarded damages for its loss of capital expenditures, costs of packaging, and other costs. According to Bright Harvest, the venue selection clause in the Agreement is over-reaching, unjust and/or unreasonable, invalid, and otherwise against public policy. *Id.* at ¶ 27.

Heinz moves to dismiss Bright Harvest's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. (Doc. 15). In support of its Motion, Heinz submits the affidavit of David F. Shaw, which sets out facts regarding the negotiation of the forum selection clause and the choice of law provision in the Agreement. (Doc. 16-1). In response, Bright Harvest states that the forum selection clause is invalid and unenforceable, and that Heinz's Motion should be denied. (Doc. 17). In support of its Response, Bright Harvest submits the affidavit of Rex King, which sets out facts regarding the parties' performance of certain obligations under the Agreement. (Doc. 17-2).

**II.     Standard of Review**

The Court first notes that "there is some controversy as to whether [Federal] Rule [of Civil Procedure] 12(b)(3) or 12(b)(6) is the proper vehicle for bringing a motion to dismiss based on improper venue when the issue turns on a forum selection clause in the parties' underlying contract." *Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 n.5 (8th Cir. 2003) (identifying a circuit split and leaving the question open in the Eighth Circuit). The Court will assume that Rule 12(b)(3), upon which Heinz bases its Motion, is the proper vehicle for bringing a motion to dismiss that relies upon enforcement of a forum selection clause. However, because evaluation of whether dismissal is proper turns on the interpretation of the Agreement between the parties and not on a strict venue-based analysis under 28 U.S.C. § 1391, the standard to be applied at this stage is more complex. The Eighth Circuit has not taken a position on this issue, so the Court has looked to other authority for

guidance. Because the Court is assuming for purposes of this case that 12(b)(3) is the proper vehicle, the Court finds that the Eleventh Circuit, which has found that dismissal based on a forum selection clause is a question of proper venue under 12(b)(3), has adopted a well-reasoned approach to dealing with 12(b)(3) motions for dismissal in the context of forum selection clause disputes. Therefore, modeling the Eleventh Circuit's approach, the Court will "consciously look beyond the mere allegations of a complaint, and, although [the Court] continue[s] to favor the plaintiff's facts in the context of any actual evidentiary dispute, [the Court] does not view the allegations of the complaint as the exclusive basis for decision." *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012).

### III. Discussion

#### A. Application of Federal Law

In this case, the parties disagree on whether federal law or state law applies to the question of whether the forum selection clause in a contract is enforceable. The issue has not been affirmatively resolved by the Eighth Circuit. *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (stating that the Eighth Circuit has yet to "adopt a definitive position on the issue" of whether to apply state or federal law in determining the enforceability of a forum selection clause, and declining to do so in that case due to the fact that the relevant states—including Arkansas—had adopted the federal standard); *but cf. BancorpSouth Bank v. Hazelwood Logistics Ctr.*, 2013 WL 535452, at *5 (8th Cir. Feb. 14, 2013) (citing to Missouri substantive law regarding the enforceability of a forum selection clause). The Court chooses to apply federal law since the enforcement of a forum selection clause appears to be a procedural question. *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 527 F.3d 527, 538-39 (8th Cir. 2009). Many lower courts in the Eighth Circuit

have applied federal law to determine the validity of forum selection clauses. *See, e.g., Medicap Pharmacies, Inc. v. Faidley*, 416 F. Supp. 2d 678, 683 (S.D. Iowa 2006) ("In a suit based on diversity of citizenship, federal law determines the validity of a forum selection clause."); *Vessel Systems, Inc. v. Sambucks, LLC*, 2007 WL 715773, at *6 (N. D. Iowa Mar. 6, 2007) ("The court finds that, in this diversity case, it should apply federal law to determine whether the forum selection clauses . . . are enforceable clauses."). Even if the Court were to apply either Arkansas or Idaho state law as to the validity of the forum selection clause, the result would be the same. Moreover, as discussed below, Idaho public policy would not prohibit the enforcement of the forum selection clause in this case.

Under federal law, "[f]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). "They are enforceable unless they would actually deprive the opposing party of his fair day in court." *Id.* In determining the enforceability of a forum selection clause, a court in this circuit must consider the public policy of the forum state in that analysis. *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 974 (8th Cir. 2012).

Before addressing the validity or the enforceability of the forum selection clause, the Court notes that the language in the clause at issue in this case is clear and unambiguous. The clause states that the parties "consent to the exclusive jurisdiction of the Federal and/or State court in Boise, Idaho" and that "venue shall lie exclusively in Boise, Idaho, and in no other location." The repeated use of the term "exclusive" makes clear that this is a mandatory forum selection clause, rather than a permissive forum selection clause. *Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (explaining that mandatory forum selection clauses employ terms such as "exclusive," "shall," and "only").

**B.      Validity and Enforceability of Forum Selection Clause**

Bright Harvest challenges the validity of the forum selection clause on the basis that it is over-reaching, unjust and/or unreasonable, and void as against public policy. (Doc. 10, ¶ 27). It also contends that Idaho has no connection to the performance of the Agreement, thus enforcement of the forum selection clause would deprive Bright Harvest of its fair day in court. The fact that the forum selection clause is mandatory does not necessarily oust the non-forum court of jurisdiction. *McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F. 2d 341, 345 (8th Cir. 1985) (holding that there can be a "compelling and countervailing reason" not to enforce a mandatory forum selection clause). Therefore, the Court may consider Bright Harvest's arguments for not enforcing the mandatory forum selection clause.

### 1.      Bright Harvest's argument that the forum selection clause is unreasonable and overreaching

To determine if there was "over-reaching" so as to set aside the forum selection clause, the Court will look to the language of the Agreement and the parties' negotiation of that provision of the Agreement. First, the language in the Agreement employing the forum selection does not appear unfair or unreasonable. The language is fairly standard for mandatory forum selection clauses. Second, the Court relies on the affidavit of Daniel F. Shaw to establish the negotiations between the parties, since Bright Harvest did not controvert Mr. Shaw's version of these facts. (Doc. 16-1). According to the affidavit, the parties appear to have actively negotiated the forum selection clause and the choice of law provision. The parties also appear to have gone back and forth in deciding on the choice of forum and at some point considered applying the law of Pennsylvania, Arkansas, Delaware, and New York before finally settling on Idaho. Further, it appears that Bright Harvest

agreed upon Idaho law because of Idaho's close geographical proximity to Oregon, the state in which Bright Harvest is incorporated.

The affidavit of Rex King sets out facts regarding the parties' performance of their obligations under the Agreement. (Doc. 17-2). However, the actual performance of the Agreement has no bearing on the parties' negotiation of contractual terms prior to performance, including terms specifying where disputes would be litigated. Absent evidence of fraud or over-reaching, forum selection clauses are enforceable even when such clauses have not been specifically bargained for or "negotiated." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) ("non-negotiated" forum selection clause printed on cruise line tickets enforced where no evidence presented that clause was product of fraud or over-reaching). Based upon the uncontroverted Shaw affidavit, the negotiation of the Agreement appears to have been at arm's-length. "Where, as here, the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain." *Servewell*, 439 F. 3d at 789; *see also Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) (stating forum selection clause not unreasonable where parties had equal bargaining power). There is no evidence of fraud or over-reaching by Heinz in the negotiation of the forum selection clause in this case.

      **2.**    **Bright Harvest's argument that forum selection clause violates public policy**

Bright Harvest bases its public policy argument on an Idaho statute which it contends voids the forum selection clause. The statute, which was amended in 2012, provides that a condition in a contract that restricts a party from enforcing its rights under the contract in Idaho tribunals is void as against public policy. Idaho Code Ann. § 29-110(1) (2012). Bright Harvest contends that Idaho

courts would strike a forum selection clause that required parties to litigate their dispute in another state. Regardless of the public policy in Idaho, Bright Harvest's argument is misplaced because this Court is to apply the public policy of the forum where suit is brought. *Union Elec.,* 689 F.3d at 974 (stating that because of the close relationship between substance and procedure in the forum selection clause analysis, consideration of the public policy of forum state should be considered). The public policy in Arkansas is that "choice-of-forum clauses in contracts are binding, unless it can be shown that the enforcement of the clause would be unreasonable and unfair." *Provence v. Natl. Carriers, Inc.*, 360 S.W. 3d 725, 729 (Ark. 2010). A bargained-for forum selection clause, as is at issue in the case at bar, would not be considered unreasonable or unfair pursuant to Arkansas public policy merely because one of the parties to the contract argued that litigating in the chosen forum would be potentially inconvenient or expensive. *See Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 606-07 (2005). Here, Bright Harvest has failed to demonstrate that the forum selection clause in the Agreement would be considered void according to the public policy of Arkansas.

      Furthermore, Bright Harvest is incorrect in arguing that the public policy of Idaho would mandate a different result. Even if the Court were to examine the Agreement's forum selection clause in light of Idaho public policy, Idaho would still be the proper forum for litigating disputes arising under the Agreement. According to the Court's reading of Idaho statute, Idaho has a strong public policy against the enforcement of forum selection clauses if such clauses operate to remove lawsuits from Idaho courts. Idaho Code Ann. § 29-100(1) states that "[e]very stipulation or condition in a contract, by which any party thereto *is restricted from enforcing his rights* under the contract *in Idaho tribunals* . . . is void as it is against the public policy of Idaho." (emphasis added). In other words, Idaho law favors the enforcement of contractual provisions that name Idaho as the chosen forum, as

the Agreement does here.  Therefore, the forum selection clause in this case is not void as against the public policy of Idaho.

### 3. Bright Harvest's argument that the inconvenience of Idaho courts deprives it of its day in court

Bright Harvest's last argument is that enforcement of the forum selection clause "would deprive it of its day in court" because the majority of the documents, witnesses, and materials for litigation are situated in the state of Arkansas.  Bright Harvest further argues that the time and expense of litigation in Idaho would deprive it of a fair trial on the merits.  The King affidavit indicates that performance of the Agreement mainly occurred in Arkansas and appears to have little connection to the state of Idaho.  The Shaw affidavit mentions Heinz's extensive operations in Idaho although they are unrelated to this Agreement.

Regardless of these assertions by the parties, the law is clear that the perceived inconvenience of having to litigate a dispute in particular state cannot override the enforceability of a valid forum selection clause.  *See M/S Bremen*, 407 U.S. at 18 (party seeking to escape his contract must show "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court"); *M.B. Rests.*, 183 F.3d at 753 (holding that inconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause).  Even though the Agreement was essentially performed in Arkansas, the possibility of Idaho being an inconvenient forum was clearly foreseeable when the parties negotiated the Agreement.  In fact, the negotiated forum selection clause provided that the parties would appear for depositions in Boise, Idaho at their own expense.  Bright Harvest's inconvenience in litigating this dispute in an Idaho forum is "not so gravely difficult" that it will be deprived of its day in court.

### C. Bright Harvest's alternative request to transfer action under 28 U.S.C. § 1404

In its Response to Heinz's Motion to Dismiss pursuant to Rule 12(b)(3), Bright Harvest states that the Court, as an alternative to dismissal, should consider transferring this action to the appropriate district court pursuant to 28 U.S.C. § 1404(a). This statute allows a federal court to transfer a civil action to any other district where it might have been brought, based on the convenience of the parties and witnesses and in the interests of justice. 28 U.S.C. § 1404(a).[1] The appropriate district would be the Idaho federal court since the forum selection clause is valid.

Although no motion to transfer was filed by either party, the Court in its discretion may construe Bright Harvest's request contained in its Response as a motion to transfer, or, alternatively, the Court may transfer the case on its own motion. *I-T-E Circuit Breaker Co. v. Becker*, 343 F.2d 361, 363 (8th Cir. 1965) (per curiam) (district court has authority to transfer sua sponte a civil action to another district pursuant to § 1404(a)). Transfer, rather than dismissal, is the approach favored by

---

[1] The Court notes that there is a Circuit split regarding whether a valid forum selection clause renders venue "improper" for purposes of Rule 12(b)(3) and 28 U.S.C. § 1406(a) in a venue other than the one chosen by the parties in their contract, or whether the forum selection clause is just one factor to consider in the discretionary, balancing analysis for transfers under 28 U.S.C. § 1404(a). The debate essentially centers around whether forum selection clauses can be considered at all in the context of motions to dismiss. The Eighth Circuit has sided with the majority of federal circuits in concluding that "Rule 12 is indeed an appropriate vehicle for enforcing a forum selection clause." *Union Elec. Co.*, 689 F.3d at 971. The fact, however, that Rule 12 is one appropriate vehicle for enforcing a forum selection clause, does not preclude consideration of a forum selection clause in the alternative context of § 1404(a). *See id*. (noting that the Supreme Court's decision in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) analyzed a forum selection clause under § 1404(b) because there was a motion to transfer and not a motion to dismiss before the court, but that *Stewart* did not *require* a court to consider a forum selection clause pursuant to § 1404(b) and could not be read to invalidate dismissal motions). Therefore, although the Court first analyzed the enforceability of the forum selection clause at issue in this case through Rule 12(b)(3), the Court is not then foreclosed from conducting a transfer analysis under § 1404(a). The Court notes that the Supreme Court recently granted a petition for writ of certiorari to address the Circuit split. *Atl. Marine Const. Co. v. U.S.D.C. for the W. Dist. of Tex. et al.*, 133 S. Ct. 1748 (April 1, 2013).

a number of district courts in the Eighth Circuit when encountering an enforceable, mandatory forum selection clause that requires litigation to take place in another jurisdiction. *See, e.g., New Prods. Marketing Corp. v. Lowe's Cos., Inc.*, 2006 WL 2811502 (D. N.D. Sept. 21, 2006) (transferring case after finding mandatory forum selection clause enforceable); *Zamora Entm't, Inc. v. William Morris Endeavor Entm'ts, L.L.C.*, 667 F.Supp. 2d 1032 (S.D. Iowa 2009) (same); *High Plains Const., Inc. v. Gay*, 831 F. Supp. 2d 1089 (S.D. Iowa 2011) (same); Graham *Const. Servs., Inc. v. Hammer & Steel, Inc.*, 2011 WL 3236083 (D. N.D. July 27, 2011) (same); *Lane v. Nash Finch Co.*, 2011 WL 4459119 (D. Neb. Sept. 26, 2011) (same). According to Wright and Miller, "[u]nder this view, dismissal is only appropriate when transfer is impossible, such as when the chosen forum is in a foreign country or when the district is not a place in which the action could have been brought." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1352 (3d ed. 2004).

Transfer may be effected by a district court "to another district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A transfer may take place only after a court considers all relevant factors listed in § 1404(a), including the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Terra Int'l Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997) (citing *Stewart*, 487 U.S. at 29). In the context of a mandatory forum selection clause, the burden ordinarily rests on the plaintiff to demonstrate why it should not be bound by its contractual choice. *Terra*, 119 F.3d at 696. However, in this case, Bright Harvest has specifically requested that the Court enforce the mandatory forum selection clause and transfer this case to Idaho rather than dismiss the case for improper venue pursuant to Rule 12(b)(3).

A forum selection clause represents a "manifestation of the parties' preferences as to a

convenient forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) (cited with approval by *Terra*, 199 F.3d at 695). Accordingly, the first § 1404(a) factor, the convenience of the parties, is considered waived by both Bright Harvest and Heinz, as the Court has determined that the parties specifically negotiated away any alleged claims of inconvenience when they agreed to litigate in Idaho at the time they entered into the Agreement. As to the second factor, the convenience of the witnesses, the Court notes that neither party is headquartered in Idaho, and it appears that none of the relevant documents or witnesses are located in Idaho; therefore, Idaho is equally inconvenient to Bright Harvest as it is to Heinz, and in any event, the parties settled upon Idaho as the chosen forum when entering into the Agreement. *See* Doc. 17-1, ¶ 32 (indicating both parties anticipated and agreed to costs associated with litigating in Idaho).

Finally, the third factor, the interests of justice, involves the Court's consideration of the following seven sub-factors: (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. *Terra*, 119 F.3d at 696.

In analyzing these sub-factors, the Court finds that the first, fourth, and fifth do not apply, as the Court is not aware of any related litigation pending in another jurisdiction, and there is no reason to assume that either party's ability to enforce a judgment or have access to a fair trial would be materially different in Idaho as compared to Arkansas. The second sub-factor weighs in favor of transfer, as Bright Harvest concedes that Idaho would be the proper forum for the dispute if the forum selection clause were determined to be enforceable. Turning to the third sub-factor, this weighs against transfer, as both parties would incur costs if the case were transferred to Idaho, but only Heinz

would be inconvenienced if the case remained in Arkansas. As for the sixth and seventh sub-factors, both of these weigh in favor of transfer to Idaho, as the parties agreed that they would litigate their contractual disputes in Idaho and apply Idaho state law to those disputes. Considering all seven sub-factors, it appears that the interests of justice are better served by transferring the case.

As all three § 1404(a) factors weigh in favor of transfer, the Court will transfer the case to Idaho for further disposition.

## IV. Conclusion

For all of the above reasons, IT IS ORDERED that Defendant Heinz's Motion to Dismiss the First Amended Complaint (Doc. 15) is **DENIED**, and the Clerk of Court is directed to transfer this action to the United States District Court for the District of Idaho.

IT IS SO ORDERED this 6th day of June, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE